1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT NORRIS,

11              Plaintiff,                    No. CIV S-06-1624 RRB GGH P

12        vs.

13   PAMELA STARR, et al.,

14              Defendants.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C.

18   § 1983.  Pending before the court is defendant's motion to dismiss, filed on March 9, 2007, for

19   failure to exhaust administrative remedies.  Plaintiff's opposition was filed on March 23, 2007,

20   defendant's reply thereto on April 3, 2007.[1]

21   Complaint

22              Plaintiff named as defendant, Pamela Starr, an office technician at California State

23   Prison - Solano (CSP-Sol), as defendant in his complaint, file-stamped July 24, 2006.  Plaintiff

24   _____

25        [1] Plaintiff's subsequent "response" to the reply, filed on April 13, 2007, is a filing not
     contemplated by the Federal Rules of Civil Procedure or the Local Rules concerning motion
26   practice and, therefore, it is disregarded.

1  contends that on January 12, 2005, he was assigned as a CSP-Sol Facility I captain clerk, and had

2  been subjected, up until June 13, 2006, that is, for an eighteen-month period, by defendant Starr

3  to "racial harassment, oppression, malice, threats, epithets, profiling and discrimination."  Form

4  Complaint, p. 4.

5          Without identifying who approached them or which staff members were

6  approached, plaintiff avers that custody staff had been approached regarding defendant Starr's

7  lack of professionalism and retaliatory conduct.  The complaints, whether spoken or by way of

8  the grievance process, have been unavailing; as a result of the complaints, defendant has

9  retaliated by removing plaintiff, an African American from his assigned job (as well as "many

10  other" African Americans).  Form Complaint and attachment, pp. 4-5.

11          Without identifying the precise conduct at issue, plaintiff contends that defendant

12  violated his right to due process by engaging in intentional misrepresentations, deceit and

13  concealment of facts "when documenting illegal reports" for plaintiff's removal from his job.

14  Defendant deprived plaintiff of a fair disciplinary process, but instead conspired to violate the

15  integrity of the process.  Id., p. 5.

16          On July 6, 2006, defendant Starr retaliated against plaintiff for exercising his

17  rights through the grievance procedure, subjected him to racial discrimination, and by means of

18  deceit, had plaintiff placed on "S-time," pending a review by the Unit Classification Committee

19  for termination of his assigned employment.  Id., p. 6.

20          Plaintiff seeks money damages, including punitive damages, as well as injunctive

21  relief.

22          At page two of the form complaint, plaintiff checked the box indicating that the

23  grievance process had not been completed, but made a note referring to the back page.   At page

24  three of his complaint, plaintiff asserts that "the grievance process here at CSP-Solano is

25  contaminated and compromised," alleging that unnamed others in the grievance process are

26  engaged in a conspiracy with defendant to retaliate or delay or dispose of grievances against

1   defendant.

2   <u>Motion to Dismiss</u>

3          Defendant moves for dismissal pursuant to nonenumerated Fed. R. Civ. P. 12(b),

4   on the ground that plaintiff has failed to exhaust his administrative remedies, even admitting the

5   omission within his complaint.  Motion to Dismiss (MTD), p. 4.

6               *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

7          In a motion to dismiss for failure to exhaust administrative remedies under non-

8   enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

9   raising and proving exhaustion."  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  The

10  parties may go outside the pleadings, submitting affidavits or declarations under penalty of

11  perjury, but plaintiff must be provided with notice of his opportunity to develop a record.  <u>Wyatt</u>

12  <u>v. Terhune</u>, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair notice by <u>Order</u>,

13  filed on December 8, 2006.

14         Should defendants submit declarations and/or other documentation demonstrating

15  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

16  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

17  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

18  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

19  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

20  remedy for non-exhaustion of administrative remedies.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120.

21          *PLRA Requirements*

22         The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

23  "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

24  other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

25  such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

26  must exhaust administrative remedies.  <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999).  In <u>Booth</u>

3

1   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

2   inmates must exhaust administrative remedies, regardless of the relief offered through

3   administrative procedures.  Therefore, inmates seeking money damages must also completely

4   exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

5   seeking money damages are required to exhaust administrative remedies even where the

6   grievance process does not permit awards of money damages).  The United States Supreme Court

7   has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

8   complete the administrative review process in accordance with the applicable procedural rules.

9   Woodford v. Ngo, 548 U.S. ___, 126 S. Ct. 2378 (2006).  Moreover, 42 U.S.C. § 1997e(a)

10  provides that no action shall be brought with respect to prison conditions *until* such

11  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

12  Cir. 2002).

13          *Administrative Exhaustion Procedure*

14          In order for California prisoners to exhaust administrative remedies, they must

15  proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

16  CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

17  third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

18  985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

19  decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

20          *Discussion*

21          Defendant observes that plaintiff himself concedes that he has not exhausted his

22  administrative remedies within the complaint itself.   MTD, p. 6, citing Complaint at pp. 2-3.

23  Defendant also correctly notes that there is no futility exception to the statutory exhaustion

24  requirement, notwithstanding plaintiff's contention that the CSP-Sol grievance procedure is

25  "contaminated."  MTD, p. 6.  As expressly stated in Booth v. Churner, supra, 532 U.S. at 741

26  n.6, 121 S. Ct. 1819: "we will not read futility or other exceptions into statutory exhaustion

1   requirements where Congress has provided otherwise....an inmate must exhaust irrespective of

2   the forms of relief sought and offered through administrative avenues."

3              Defendant does take note of plaintiff's July 8, 2006, 602 inmate grievance

4   appealing as retaliatory the issuance by defendant Starr of a CDC-115 Rules Violation Report

5   (RVR), dated June 12, 2006, for Misuse of State Property and Supplies.  MTD, pp. 6-7;

6   Declaration of CSP-Sol Appeals Coordinator, S. Cervantes (Cervantes Dec.), ¶ 8, & Exhibit

7   (Ex.) A thereto.  This appeal was ultimately denied at the third level on December 19, 2006.

8   MTD, p. 7, Declaration of N. Grannis, CDCR[2] Chief of Inmate Appeals Branch (Grannis Dec.), ¶

9   6, & Ex. A.  As defendant correctly notes, even if this appeal addresses the same issues

10  implicated by this lawsuit, plaintiff failed to exhaust his claim prior to the filing of this lawsuit

11  on July 24, 2006.[3]  MTD, p. 7.  See, McKinney v. Carey, supra, 311 F.3d 1198.

12  _____Moreover, N. Grannis, under penalty of perjury, declares that plaintiff did not file

13  any third-level appeal that was accepted for review concerning wrongful removal from his job

14  assignment due to defendant Starr's discriminatory and retaliatory conduct.  MTD, Grannis Dec.,

15  ¶ 8.

16             In opposition, plaintiff revives his allegations that despite his exercise of due

17  diligence, that the CSP-Sol grievance procedure was "contaminated and/or compromised" when

18  it came to complaints filed against certain staff members, such as defendant.  Opposition (Opp.),

19  p. 1.  Plaintiff maintains that there was a conspiracy between defendant Starr and CSP-Sol

20  Appeal Coordinator Cervantes, not a defendant, in the manner that the grievances against Starr

21  failed to process, citing his Exs. A through F & H through I.  Opp., pp. 1-2.

22             Plaintiff points to his initial effort to resolve his grievance informally, dated as

23  signed on June 22, 2006, regarding racial discrimination and harassment by defendant by

24  _____

25       [2] California Department of Corrections and Rehabilitation.

26       [3] See discussion, infra, regarding actual filing date of this action.

submitting a complaint form to defendant on July 6, 2006.  Opp., p. 3 & Ex. A.  At Ex. B, S.

Cervantes returned plaintiff's grievance documents, stating that the staff misconduct appeal

concerned an incident that occurred on June 13, 2006, resulting in a CDC-115 RVR, which

would bypass the informal appeal level, citing CAL. CODE REGS. tit.xv, § 3084.5(a)(3)(G).[4]  The

rejection notice informed plaintiff that he incorrectly gave the appeal to the subject staffperson on

July 6, 2007, instead of forwarding it via institutional mail.  After the appeal was delivered on

July 6, 2006, and could not have been addressed informally, it was due within 15 days of June

13, 2006, according to Cervantes, "when discovery occurred," but was instead late by one day,

pursuant to CAL. CODE REGS. tit.xv, § 3084.6(c),[5] having arrived on the 16th working day.

       In plaintiff's Ex. C to his opposition, plaintiff in a letter to Cervantes, dated July

7, 2006, maintains that the CDC-115 is not related to his appeal, that he believed he had to

attempt informal level resolution and that belief, coupled with the facility's lockdown status,

delayed the appeal.  Plaintiff further stated therein that he had amended the appeal to implicate

defendant's recent misconduct.

       At Ex. D, plaintiff includes S. Cervantes' July 11, 2006, second rejection of the

appeal as untimely, wherein the appeals coordinator noted that plaintiff could have appealed

timely while on lockdown and reiterating that an informal level response was not required.

       At Ex. E, plaintiff includes a note to Cervantes, dated July 12, 2006, indicating

that he had not intentionally delayed his appeal, repeating that he believed it had to be resolved

informally and that he was appealing as of June 22, 2006, not from June 13, 2006, (apparently

intending to indicate that the events he was appealing occurred on June 22nd, not June 13th).

\\\\\

---

[4] This regulation subsection states that the informal appeal level is waved for "[a]lleged
misconduct by a departmental peace officer."

[5] This subsection requires an appellant to submit an appeal "within 15 working days of
the event or decision being appealed, or of receiving an unacceptable lower level appeal
decision."

1         At Ex. F, plaintiff includes Cervantes' third rejection, filed on July 17, 2006,

2   which plaintiff received on July 18, 2006 (Opp., p. 6)[6], wherein he states that the appeal was once

3   again rejected as untimely, that all of plaintiff's documents and argument had been considered,

4   but nevertheless finding that the date of discovery was June 13, 2006, and the appeal should have

5   been filed by July 5, 2006, but was tardy by one day (July 6, 2006).

6         Ex. H is plaintiff's letter to non-defendant CSP-Sol Warden Sisto, dated June 30,

7   2006 (stamped as received on July 5, 2006), complaining of eighteen months of harassment and

8   racial discrimination by defendant Starr.  Plaintiff specifically references a June 13, 2006,

9   meeting with a certain staff (other than defendant), as a result of which plaintiff claims that he

10  and other black inmates received RVR's and CDC 128(b) chronos for events occurring months

11  before.  Plaintiff refers therein to defendant's having removed black inmate workers vindictively

12  for their attendance at the meeting, and he states that fifteen past and present inmate workers

13  could substantiate plaintiff's representations.

14        At Ex. I, plaintiff includes a memorandum response from Chief Deputy Warden

15  S.R. Stiles, not a defendant, dated July 21, 2006, regarding plaintiff's June 30, 2006, letter to the

16  warden, telling plaintiff that his complaint should be submitted in the form of an appeal directly

17  to the appeals coordinator, and telling plaintiff that plaintiff should submit his letter, attached to

18  the memorandum, with his appeal.

19        Plaintiff evidently did not elect to proceed down that route (for a fourth time).

20  Plaintiff maintains that he and other inmates had at unspecified times prior to the June 13, 2006,

21  meeting with Corr. Capt. Sequira; Corr. Sgt. Williams, and C/O Geoinig, over the eighteen-

22  month period of which he complains, and before submitting a formal complaint form, brought to

23  the attention of custody staff the alleged misconduct of defendant.  Opp., p. 4.  Plaintiff also

24  contends that July 4th, a federal and state holiday, was wrongly calculated as a working day by

25

26        [6] The undersigned references the court's electronic docketing system's pagination.

1  Cervantes in rejecting his appeal.  Opp., pp. 2-3.  Plaintiff maintains that following his three

2  unsuccessful attempts to process his grievance, he felt compelled to bring this action.  Opp., pp.

3  5, 7.

4          In reply, defendant asserts that July 4th was not counted as a working day in the

5  timeliness calculation.  Reply, p. 3.  According to the court's own calculation, it does appear the

6  Appeals Coordinator Cervantes did not count the holiday in his assessment.  However, it also

7  appears that Cervantes was hyper-technical in rejecting plaintiff's grievance based on one day's

8  tardiness and could have exercised some discretion to excuse the de minimis breach, particularly

9  in light of the explanations offered by plaintiff in his apparent efforts to be diligent.

10          On the other hand, the court notes in passing, that application of the mailbox rule[7]

11  to this case, which very often works to the advantage of inmate litigants, would not be helpful to

12  this plaintiff.  Although this complaint is court-stamped as having been filed on July 24, 2006,

13  the complaint itself is signed and dated July 6, 2006, by plaintiff, the date that plaintiff expressly

14  sets forth in his opposition as the date he initiated the prison grievance.  In addition, in a separate

15  docket entry, also court-stamped July 24, 2006, plaintiff has filed a letter to the Clerk of the

16  Court, stating that his grievance is being delayed, and that letter too is dated as written on July 6,

17  2006.  The court will not apply the mailbox rule in this matter because it is not clear whether

18  plaintiff actually delivered the complaint for mailing to prison authorities on July 6, 2006,[8] or on

19  some specific later date, and because defendant does not raise the issue.

20          However, it is inescapable that plaintiff filed this complaint before any

21  administrative grievance procedure could have been completed.  Even absent application of the

22  mailbox rule, it is plain that in order for the complaint to have been filed in this court on July 24,

23  2006, plaintiff had to have had it mailed at the very least three or four days earlier.  While the

24

25          [7] Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S.Ct. 2379, 2385 (1988), pro se prisoner filing is dated from the date prisoner delivers it to prison authorities.

26          [8] Plaintiff does not append a dated certificate of service.

filing may well have followed Cervantes' third rejection of the grievance the odyssey of which

plaintiff has set forth in detail, plaintiff in no way explains his filing of this action at the latest

just days after filing the grievance noted by defendant in the motion as filed by plaintiff on July

8, 2006, relating to the issuance of a CDC 115 RVR by defendant against plaintiff, which

certainly touches on the allegations of this complaint.[9]   As noted, plaintiff does not reference this

grievance and does not suggest that it processed through administrative appeal levels in an

untimely manner, that is, not in accordance with the grievance response times set forth under CAL.

CODE REGS. tit.xv, § 3084.6 (b).   However, even such an allegation would be unavailing because it

is evident that plaintiff initiated this action within days of commencing, not only the

administrative grievance which was rejected three times as untimely, but also a related grievance

that was ultimately denied on December 19, 2006, at the third level, months after plaintiff had

begun this lawsuit.   As to the grievance rejected as untimely, plaintiff is precluded by Woodford

v. Ngo, supra, 126 S. Ct. 2378, from proceeding in this action.   As to the grievance that was

completed many months after filing this case, it is clear that plaintiff initiated this action

prematurely under the PLRA.   McKinney v. Carey, supra, 311 F.3d 1198.

_Conclusion_

        The undersigned is not completely sanguine about having to recommend a

dismissal here.   It is the undersigned's experience that at best, the myriad procedures set forth for

prisoner grievances, and where to go first, causes unnecessary frustration with the prison

grievance system – a system which benefits the prison administration if perceived by the inmates

as something more than a "gotcha" system.   At times, a prisoner's first formal grievance is

rejected because he did not attempt informal resolution; on the other hand, as is the case here,

one pursues informal grievance resolution at his peril from a timeliness standpoint if it is later

[9] To the extent that plaintiff seeks money damages in his allegations herein with regard to due process violations involved in the disciplinary proceeding resulting in an apparent credit loss, it is entirely likely that such claims could not proceed on a separate basis, that is, as barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

9

1  decided that the informal route should have been bypassed.  CRCD can do better than this.

2          In accordance with the above, IT IS HEREBY RECOMMENDED that

3  defendant's motion to dismiss for failure to exhaust administrative remedies, filed on March 9,

4  2007, be granted and this action be dismissed.

5          These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10 shall be served and filed within ten days after service of the objections.  The parties are advised

11 that failure to file objections within the specified time may waive the right to appeal the District

12 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13 DATED:   12/10/07

                                              /s/ Gregory G. Hollows
14                                          _____

15                                          GREGORY G. HOLLOWS
                                            UNITED STATES MAGISTRATE JUDGE

16 GGH:009
   norr1624.mtd

17

18

19

20

21

22

23

24

25

26